UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

        Plaintiff,

v.                                                                        Cr. No.  09-3424 JH

RONALD TOM,

        Defendant.

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on the United States' *Motion in Support of Petition to Modify the Conditions or Term of Supervised Release*, filed October 6, 2011 [Doc. 44].  On September 19, 2011, October 11, 2011, and October 13, 2011, the Court heard testimony and argument regarding this motion and the underlying petition filed by the Unites States Probation Office.  In reaching its decision on the United States' motion, the Court has considered the arguments presented in the briefing and the testimony, arguments, and exhibits presented at the hearings.  The Court, having considered the evidence and relevant law, and being otherwise fully informed, finds that the United States' motion is well-taken and should be granted.

## BACKGROUND

On January 26, 2010, Defendant pled guilty to one count of abusive sexual contact.  *See* Doc. 14.  The Defendant's victim, T.W., was approximately thirteen years old when he reportedly began touching her inappropriately in April 2007.  *See* Presentence Report ("PSR") ¶¶ 8, 16.  At the time Defendant abused her, T.W. was living with her grandmother, who was Defendant's long-time girlfriend.  *Id*. ¶ 9.  Defendant has characterized himself as T.W.'s step-grandfather, and he helped raise her since she was three years old.  *Id*. ¶ 13.  Following T.W.'s

disclosure in the fall of 2008 that Defendant had been touching her inappropriately, FBI agents interviewed Defendant. *Id*. ¶ 9.  During this interview, Defendant admitted touching T.W. over her clothing on at least four separate occasions. *Id*.  One of these occasions occurred in September 2008, when he entered T.W.'s room while she was sleeping and began to touch her leg.  T.W. awoke and ordered him to stop, at which point he left her room. *Id*.  The next evening, Defendant again entered T.W.'s room while she was sleeping and began touching her inner thigh with his hand. *Id*. ¶ 10.  T.W. again woke up and ordered him to stop, which he did. Defendant admitted to agents that he became aroused when he touched T.W. *Id*. ¶¶ 10, 12, 19. On January 26, 2010, Defendant pled guilty to one count of abusive sexual contact of T.W. as charged in an Information filed by the United States. *Id*. ¶ 3.  In a written acceptance of responsibility statement, Defendant states that he does not deny that he touched T.W. inappropriately, but claims that he was drinking heavily on those occasions and has no memory of doing anything inappropriate. *Id*. ¶ 20.

On May 27, 2010, the Court sentenced Defendant to 16 months imprisonment, to be followed by one year of supervised release with special conditions. *See* Doc. 29.  One of the special conditions of supervised release is that Defendant not have contact with any children under the age of eighteen without prior written permission of his probation officer. *See* Doc. 31 at 5.  Defendant's term of supervised release was set to commence on September 17, 2011.  In anticipation of this event, on September 14, 2011, the United States Probation Office filed a petition requesting that the Court modify Defendant's conditions of release to include the requirement that Defendant complete a program at a residential re-entry center for a period of up to six months.  In the petition, the Probation Office noted that, during a visit to Defendant's residence, an officer discovered that Defendant's daughter lives within 100 yards of Defendant's

residence with two children under 18 years, including a girl who is approximately eight years old.  Because Defendant is unable to provide a residence to be released to that is not in close proximity to children under 18 years, and because Defendant's therapist opined that Defendant is not equipped to be in the community without further treatment, the probation officer requested that he remain in a residential re-entry center to continue to receive sex offender treatment.

At its hearings on this matter, the Court heard the testimony of Dr. Bobby Sykes and Dr. Eric Westfried.  Dr. Sykes performed a risk assessment of Defendant pursuant to a contract with the Bureau of Prisons.  Although the formal tests that he employed suggested a low likelihood of recidivism, Dr. Sykes ultimately concluded that Defendant posed a high risk of recidivism.  He made this clinical judgment as a result of his perception that Defendant was evasive and reluctant to provide personal information, and due to his belief that Defendant had very little insight into the factors that led him to commit the offense.  Dr. Sykes opined that continued treatment in a safe environment, such as a residential re-entry facility, could help Defendant better understand his urges so that he would be less likely to offend in the future.  Dr. Westfried testified on behalf of Defendant. While he had numerous criticisms of Dr. Sykes' methodology and his risk assessment conclusions, he did not perform his own risk assessment, nor did he offer a clinical opinion about Defendant's risk of recidivism.  Ultimately, the expert testimony did not shed a great deal of light on Defendant's risk of recidivism, and the Court has based its decision on the factors discussed below rather than on the opinions of either expert.

## **LEGAL STANDARD**

The Court may order any special condition of supervised release to the extent that the condition: (1) is reasonably related to the nature and circumstances of the offense and the history and characteristics of the defendant, the need for the sentence imposed to provide adequate

deterrence, the need to protect the public from further crimes by the defendant, and the need to provide the defendant with necessary educational, vocational, medical, or correctional training or treatment in the most effective manner; (2) involves no more deprivation of liberty than is reasonably necessary to provide adequate deterrence, protection to the public, and necessary educational or vocational training or other correctional treatment in the most effective manner; and (3) is consistent with any pertinent Sentencing Commission policy statement.  18 U.S.C. § 3583(d).  A special condition of supervised release need not be related to all of these factors, as long as it is reasonably related to one or more of the listed factors.  *See United States v. Begay*, 631 F.3d 1168, 1174 (10th Cir. 2011).

In assessing whether to modify the conditions of a defendant's supervised release, the Court need not determine whether any new or changed circumstances exist because the statute governing modification of a defendant's conditions of supervised release, 18 U.S.C. § 3583(e)(2), provides the Court with discretion to modify conditions without a finding of changed circumstances.  *See id*. at 1172.  Instead, prior to modifying a defendant's supervised release conditions, the Court must hold a hearing and consider the enumerated factors specified in section 3553(a).  *Id*.

## ANALYSIS

Defendant does not contest the Court's authority to impose the common requirement of placement in a residential re-entry program.  Instead, he argues that such a placement would be unfairly punitive and counterproductive to his treatment and integration into society.  He points out that there is no indication that he was noncompliant with his pretrial conditions of release, despite living in close proximity to his young granddaughter, and he contends that his risk of recidivism is very low because his victim was not a blood relative and because he has had long-

term age-appropriate relationships.  He further urges the Court to consider the stability that living with family can provide, and to consider that outpatient treatment with a provider more attuned to Navajo culture would likely be more effective than residential treatment away from home in a less culturally-sensitive environment.

      The Court has carefully considered Defendant's arguments and concerns.  However, the Court is confronted in this case with a convicted sex offender whose victim was a young teenager that Defendant considered his step-granddaughter and whom he had helped raise from the age of three.  Defendant's underlying conduct involved multiple inappropriate contacts with his victim over the course of months.  He would be returning home to a situation where his eight year-old granddaughter would be living in very close proximity to him in an isolated compound.  This close proximity, by itself, raises the risk that Defendant could inadvertently violate a condition of release, namely that he not come into contact with any children under the age of 18 without the written consent of his probation officer.  The Court is aware that Defendant's daughter has testified that she would relocate her children if necessary to enable Defendant to return home, but the Court has not received any information indicating that this has yet occurred.

      The Probation Office has requested that the Court modify Defendant's conditions of supervised release to require that he reside at and complete a therapeutic program at a residential re-entry center for a period of up to six months.  Given the circumstances detailed above, the Court finds that this request is a reasonable one.  Looking at the nature and circumstances of the offense and the history and characteristics of the Defendant, as required by 18 U.S.C. §§ 3583(d)(1) and 3553(a)(1), the Court sees someone who has demonstrated the capacity and willingness to sexually assault a girl who, while not a blood relative, was almost like a member of his family.  He made inappropriate advances multiple times while his young victim was

sleeping, and claims to have no memory of doing so because of his level of intoxication. Continuing a course of treatment at a residential re-entry center would help to protect the public, and especially Defendant's young granddaughter, from further crimes of Defendant, as contemplated by 18 U.S.C. § 3553(a)(2)(C). It would also provide Defendant with needed sexual therapy to help him come to terms with why he acted in the manner that he did, before being exposed to his granddaughter and other children. *See* 18 U.S.C. § 3553(a)(2)(D).

This condition does not involve a deprivation of liberty that is greater than reasonably necessary to accomplish these goals. The Court understands that "special conditions that interfere with the right of familial association can do so only in compelling circumstances." *United States v. Smith*, 606 F.3d 1270, 1284 (10th Cir. 2010). However, this case differs from *Smith* in two significant ways. *Smith* concerned a condition of release that prohibited the defendant's ability to have contact with any children, following his conviction for sexually assaulting an unconscious woman over the age of 18. *Id*. at 1282. The Tenth Circuit found that such a restriction was reasonable in general, but remanded for the district court to clarify whether the restriction was meant to include the defendant's own child and minor siblings, finding that nothing in the record or the nature of the crime provided a reason to believe that the defendant was a danger to his own child or minor siblings. *Id*. at 1284. In this case, Defendant is not challenging the condition that he not have contact with children, including his grandchildren. Indeed, he has pledged that he will do whatever is necessary to stay away from his grandchildren, even if living in close proximity to them. Instead, he is only challenging the condition that he be required to live for up to six months in a residential re-entry facility rather than being allowed to return to his home. While this would have the practical effect of keeping Defendant away from his grandchildren for a period of time, it does not further burden

Defendant's right of familial association with those children, because such association is already prohibited by the unchallenged condition that he have no contact with any children.  Moreover, even if requiring Defendant to spend additional time in a residential re-entry facility does interfere with his right of familial association, compelling circumstances exist in this case.  Defendant has shown himself willing to violate the bond of trust placed in him by a young girl who was essentially a family member, so that a condition that keeps him away from someone who has similar characteristics to the victim is hardly attenuated from the underlying offense.

In granting this petition to modify Defendant's conditions of supervised release, the Court notes that it is granting the modification for a period of *up to* six months.  It expects that the probation department will evaluate the efficacy of Defendant's treatment over time, and that it will continue to consider whether Defendant might find more success in his treatment if he is allowed to return to his home and work on an outpatient basis with a therapist well versed in Navajo culture.  In addition, if circumstances change regarding the presence of Defendant's grandchildren living in close proximity to him, Defendant's counsel may apprise the Court of those changes.

**IT IS THEREFORE ORDERED** that the United States' *Motion in Support of Petition to Modify the Conditions or Term of Supervised Release* [Doc. 44] is GRANTED.

_____
UNITED STATES DISTRICT JUDGE